CHARLES SMITH, THOMAS ROSS, P. L. DANIELSON, JOSEPH FRANCISCO, MATTHEW HANSON, CHARLES DAHLGREN, J. B. JOHNSON, QUAITA ANDREA, ERIC MATSON, CHARLES HERBERT, F. C. SHAEFFER, AUGUST ANDERSON, ROBERT OLANDER, and SERAGHI WARROW, Libellants and Appellees,

*v.*

THE SHIP "CHALLENGER," HER TACKLE, APPAREL, AND FURNITURE, Respondent.

R. M. MOUNTFORT AND E. H. THOMPSON, Claimants and Appellants.

Admiralty Rule XVI. precludes a suit *in rem* against a vessel for assault upon and cruel treatment of seamen by officers of the vessel.
The remedy is by action *in personam*.
Appeals in admiralty are taken to this Court under the statutes of the Territory, and not the civil law.

APPEAL from the Third Judicial District, holding terms at Seattle.

The amended libel of libellants, filed March 10, 1883, alleges in substance :

That in the month of May, 1882, the libellants shipped on the " Challenger," at the port of Philadelphia, for a voyage from that place to New Tacoma, Washington Territory ; the libellant Smith shipping in the capacity of third mate, the libellant Matson as carpenter, the libellant Shaeffer as deck boy, and others as seamen, at the wages specified in the libel. That they signed shipping articles. That the mates of said ship were men of violent temper, and cruel and inhuman dispositions, which fact was at all times known to the master, but not to the libellants until after the commencement of the voyage. That during the whole course of the voyage said libellants, without cause, were wrongfully subject to beatings, imprisonments, cruelties, and abuse by the mates of said ship ; and that the master failed, neglected, and refused to use due diligence to protect the libellants from such acts. Then follows in said libel a particular description of said wrongful acts towards each of said libellants, whereby they claimed to be damaged. Then follows in said libel an allegation that wages are due said libellants.

The claimants excepted in detail to all the allegations in the amended libel, except those referring to the shipment of the libellant, and the amount of wages due them. These exceptions, twenty in number, were all overruled by the Court.

The claimants then answered, admitting the shipment of the libellants, for the voyage mentioned in the libel, at the wages specified in the libel, except in the case of libellant Herbert, who, they allege, was to receive $18 per month, instead of $28, as alleged in the libel.

They denied all the allegations concerning the cruel dispositions and temper of the mates, and the allegations of the cruel treatment of the libellants.

They also pleaded the shipping articles ; what had been done and paid under them ; a compliance with the same on the part of claimants: and by affirmative allegations justified the treatment of libellants, and averred that in all cases of confinement and discipline due regard had been shown the seamen.

It was also alleged that no demand had been made by the seamen for the wages.

The claimant Thompson, for himself and other owners of the ship, then pleads that in no event should they be held liable in this case. That none of the said owners have ever caused, encouraged, ratified, or consented to any of the alleged wrongs set forth in the said amended libel, and that the said master of the said ship was known to them as an officer of long experience and high reputation, and as both careful and humane in his profession; and that he had been in the service of said owners as the first officer of said ship for five years prior to the commencement of the said voyage; and that his conduct as such had always been that of a skillful officer and humane man; and that after a thorough inquiry among those who best knew him and his qualifications for the position of master of the said ship, they were led to believe, and did believe, that he was a competent person for the position of master of said ship, and would discharge his duties as such officer properly; and for that reason placed him in the command of the said ship.

The Court made its findings, which are substantially as follows:

That since the commencement of the action, libellants Smith and Herbert, without the advice of counsel, settled with the proctors for claimants, and released the ship from their claims; but that neither of said settlements operated to release the ship from its liability for costs. That the libellant Matson, since the commencement of the action, with the advice of his proctors, received the wages due him, and agreed that the costs should abide the results of the suit.

That the allegations of the libel concerning the shipment of the libellants and the amounts of wages to be paid, are true; that they have not been paid their wages; that in consequence of their cruel treatment by the officers of the ship, they were discharged from their obligation under the shipping articles, and were entitled to receive the several amounts alleged by the claimants to have been tendered to them. That none of said wages have been deposited in Court or tendered therein.

That as a part of the shipping contract of said libellants, it was understood and agreed between the said libellants and the

II. Wash.—29.

master of said ship, for himself and on behalf of the said ship and the owners thereof, that upon said voyage said libellants were to be treated with common humanity by the officers of said ship, and accorded the rights of merchant seamen; and that said master should, during said voyage, use due diligence to protect said libellants from all wrongful abuse, cruelty, and oppression of said officers. That the first mate, George Conway, and the second mate, John Bennett, were both of them men of violent temper, and cruel and inhuman disposition, all of which said master well knew during the whole of said voyage.

That the libellants properly performed their duties on the ship.

That during the whole course of said voyage said libellants were treated without common humanity by said master and said first and second mates, and said master failed, neglected, and refused to use due diligence, or any diligence, to protect said libellants from the wrongful abuse, cruelty, and oppression of said first and second mates; and by reason of said neglect and failure on the part of said master, the said libellants were during the whole course of said voyage, while in the discharge of their duties on board said vessel, without cause or excuse, wrongfully subjected to constant beatings, cruelties, and abuse by said mates, whereby said contract of shipment was violated, and said libellants were each made sick and put to great bodily pain and suffering, and damaged greatly.

Then follows findings as to the amount of damages sustained by each of the libellants, and that the claimants and their stipulators are bound for the payment of the same.

The Court then made the following conclusions of law:

I.   That said ship is liable *in rem* for said wages, and all the damages suffered by the libellants, or either of them, by the violation of the shipping contract as aforesaid.

II.   The libellants are entitled to a decree, each, for their wages found due as aforesaid, with interest at 10 per cent. per annum, from October 7, 1882, and the damages found due as aforesaid, with costs, to be entered against said ship and the stipulators aforesaid.

Upon these findings a decree was entered, and from that decree an appeal was taken to this Court by the claimants.

A motion to dismiss the appeal, because brought under the statutes of the Territory instead of the civil law, was overruled, but no opinion was filed.

*Struve, Haines & McMicken,* Proctors for Claimants and Appellants.

The libellants cannot hold the ship liable for assaults alleged to have been committed upon them by the officers.

No right to proceed *in rem* exists, save where there is a maritime lien for its foundation. (*The Rock Island Bridge,* 6 Wall. 213.)

A maritime lien imports a tacit hypothecation of the subject of it. It is *stricti juris,* and cannot be extended by implication or construction. (*Vandewater* v. *Mills,* 19 How. 89; Desty's Shipping and Admiralty, Sec. 68.)

The right to proceed *in rem* is simply a question of *process,* and not of jurisdiction. (*The Steamer St. Lawrence,* 1 Black, 522.

This is within the power of the Supreme Court of the United States to regulate by rule. (Ibid; *Copp* v. *Decaster,* 8 Benedict, 321.

This it has done, and entirely limited the remedy in cases like these to actions *in personam.* (Admiralty Rule No. 16, Supreme Court of the United States.)

The Supreme Court has by its rules regulated the remedy in all classes of cases. (Admiralty Rules 12, 13, 14, 15, 16, 17, 18 and 19 of the Supreme Court of the United States.)

The libellants cannot hold the ship liable for assaults alleged to have been committed upon them by the officers.

No right to proceed *in rem* exists, save where there is a maritime lien for its foundation. *The Rock Island Bridge,* 6 Wall. 213; *The Druid,* 1 W. Robinson, 391; Story on Agency, — ed., Sec. 456; *The Richmond Turnpike Co.* v. *Vanderbilt,* 1 Hill N. Y. 480; Ibid, 2 N. Y. 479; *The Hibernia,* 1 Sprague's Decisions, 78; *Wright* v. *Wilcox,* 19 Wend. N. Y. 343; Cooley on Torts, 537.

The officers of the ship were the fellow servants of the libellants, engaged in the same common employment; and the owners of the ship cannot be held liable for their negligence unless they have been negligent in their selection, and have retained

them after notice of their incompetency. (*Halverson* v. *Nisen*, 3 Sawyer, 562; Sherman and Redfield on Negligence, Sec. 86; Wharton on Negligence, Sec. 224; *Brown* v. *The D. S. Cage and Owners*, 1 Woods, 401; *Jordan* v. *Wells*, 3 Woods, 527).

Although the servant guilty of negligence is the superior of the one injured, their common employer is not liable. (Story on Agency, — ed. 570; Cooley on Torts, 544; *Wright* v. *N. Y. Central Railroad Co.*, 25 New York, 564.)

The fact that the injured servant was under the control of the servant by whose negligence the injury was caused, makes no difference. (Sherman and Redfield on Negligence, Sec. 86; Wharton on Negligence, Sec. 229; *Sherman, Ad.,* v. *Rochester & Syracuse R. R. Co.*, 17 New York, 153; *Searl* v. *Lindsay*, 11 Common Bench, [N. S.] 429; *Chicago & Alton R. R. Co.* v. *Murphy*, 53 Ill. 336; *Howland* v. *Milwaukee S. & S. W. R. R. Co.*, The Reporter, Vol. 13, 607; *Michigan Central R. R. Co.* v. *Dolan,* 32 Michigan, 510.)

The master does not warrant the competency of any of his servants to the others. (Sherman and Redfield on Negligence, Sec. 86.)

This rule is applicable in the admiralty as well as in other branches of the law. (*The E.B. Ward, Jr.*, 20 Federal Reporter, 702.)

The libel alleges that the character and disposition of the mates was well known to the master, and not to the libellants until after the vessel had sailed upon her voyage. This allegation was excepted to and the exception overruled. It should have been sustained. (Wharton on Negligence, Sec. 214; *Thompson's Administrators* v. *Chicago, M. & St. P. R. R. Co.*, 18 Federal Reporter, 239; *Dunmead* vs. *American Mining and Smelting Co.*, 12 Federal Reporter, 847.)

The libellants have joined their claims for wages with their claims for damages for assaults alleged to have been committed upon them. The claimants excepted to all the allegations concerning the assaults. Those exceptions should have been sustained. (*The Guiding Star*, 1 Federal Reporter, 347; *Pratt* v. *Thomas,* 1 Ware, 427; *Knowlton* v. *Ross*, 1 Sprague's Decisions, 163.)

There can be no recovery for costs in this action, because no

demand was ever made before the commencement of this suit; and the answer and the evidence show that the owners were always ready and willing to pay the wages, and even tendered them to the libellants.  (Benedict's Admiralty, 2d ed., Secs. 551 and 552 ; Dunlap's Admiralty Practice, 91 and 92.)

*Burke & Haller*, Proctors for Libellants.

By the civil law, appeals were to be taken by notice at the time of the decree, or within ten days after, before a notary. (1 Brown's Civil and Admiralty Law, 494, 498 ; 2 Brown's Civil and Admiralty Law, 435, 439 ; *Norton* v. *Rich*, 3 Mason, 444 ; *The Steamer New England*, 3 Sumner, 498.)

We must look to the civil law for our guidance in appeals in admiralty. (*The Zephyr* v. *Brown et al.*, 3 Pacific Reporter, 186 ; *Waddell et al.* v. *The Daisy*, 3 Pacific Reporter, 616.)

The admiralty jurisdiction extends to all subject matters concerning the navigation of the sea. (*Brig President*, 4 Wash. C. C. 454: *Insurance Co.* v. *Dunham*, 11 Wall. 26, 29 ; *The Emily Louder*, 17 Wall. 669.)

All maritime contracts or obligations entered into by the master, within the scope of his authority as master *per se*, hypothecate the ship, and the ship is liable *in rem* for the breach of such contract or obligation. (*The Williams*, 1 Brown, 208, 225 ; *The John L. Dimmick*, 3 Ware, 196 ; *The Paragon*, 3 Ware, 326 ; *The City of Brussels*, 6 Benedict's Rep. 370 ; *Phelps* v. *The City of Panama*, 1 W. T. 535 ; S. C., 11 Otto, 462 ; *The Aberfoyle*, 1 Blatch. C. C. 361 ; *The Pacific*, Ibid, 570 ; Benedict's Admiralty, 2d ed., Sec. 309.)

The owners are responsible for the acts of the master done in the course of his employment, whether willful or not. (*Sherwood* v. *Hall*, 3 Sumner, 126 ; *Tillman* v. *Moore*, 4 Fed. Rep. 233 ; *Steamer New World* v. *King*, 16 How. 260 ; *The Sampson* v. *The Iola*, 4 Blatch. C. C. 28 ; *Ralston et al.* v. *The States Rights*, Crabb, 23 ; Abbott on Shipping, 7 Amer. from 8 Eng. ed., 173 and note ; *Pressly* v. *Mobile & G. R. Co.*, 15 Fed. Rep. 199 ; *Philadelphia W. & B. R. R. Co.* v. *Quigley*, 21 How. 210 ; *Merchants' Bank* v. *State Bank*, 10 Wall. 645, 646 ; *Pendleton* v. *Kinsley*, 3 Clifford, 417, 424 to 429 ; Wharton on Agency and Agents, Sec. 543, and cases cited ; Broome's

Legal Maxims, 7th ed., 844; Story on Agency, 9th ed., Sec. 452.)

The owners are responsible for personal injuries caused by the negligence of those in charge of the vessel. (*The Highland Light Chase*, Dec. 150; *Holmes* v. *Oregon & Cal. R. R. Co.*, 6 Saw. 264.)

The ship is liable *in rem* for personal injuries caused by the negligence or wrongful act of the officers and those in authority on the ship. (*The New World* v. *King*, 16 How. 260; *The Sea Gull*, 1 Chase's Dec. 145; *The Garland*, 5 Fed. Rep. 924; *The Steamer Kirkland*, 3 Hughes, 641; *The Washington* v. *The Gregory*, 9 Wall. 513; S. C., 2 Benedict, 226; *Phelps* v. *The City of Panama*, 11 Otto, 462; S. C., 1 Wash. Ter. 535; *The Kate Cann*, 2 Fed. Rep. 241; S. C., 8 Fed. Rep. 719; *The Calista Hawes*, 14 Fed. Rep. 493; *Brown* v. *The D. D. Gage and Owners*, 1 Woods, 401; *The Lord Derby*, 17 Fed. Rep. 265; Benedict's Ad., 2d ed., Sec. 309.)

The contract of shipment imposes upon the ship not only that the seamen shall be fed properly and paid their wages, but that they shall be protected from all wrongful abuse, injury and oppression while performing their duty. The ship does not insure the seaman, but the officers must use due diligence to prevent wrongful bodily injury occurring to the seaman. A failure so to do is a breach of the contract of shipment. (2 Parsons on Shipping and Admiralty, p. 90; *Anderson* v. *Ross*, 2 Saw. 91; *Shorey et al.* v. *Rennell*, 1 Sprague, 407; *Nickels* v. *Griffin*, 1 Wash. Ter. Rep. 405; *Phelps et al.* v. *City of Panama*, Ib. 535; *Brush* v. *Schooner Alonzo*, 2 Clifford's Rep. 548; Curtis' Rights and Duties of Merchant Seamen, pp. 26, 27; Benedict's Ad., 2d ed., Sec. 309.)

The Supreme Court rules have not limited or regulated the proceedings in all classes of cases. (*The Monte A*, 12 Fed. Rep. 331.)

A seaman is not a fellow servant of the officers of the ship, in the sense which would exonerate the common employer from liability for injury caused by the negligence or misconduct of the officers. (*The Claisop Chief*, 8 Fed. Rep. 163; *The Chandos*, 4 Fed. Rep. 645; *Todd* v. *Bark Tulchen*, 2 Fed. Rep. 600; *Gerrity* v. *Bark Kate Cann*, Ib. 241; S. C., 8 Fed. Rep. 719;

*Chicago & N. W. R. R.* v. *Morand*, 34 Am. Rep. 173 ; *Railroad Co.* v. *Fort*, 17 Wall. 557 ; *The Highland Light*, Chase's Dec., 150,154 ; *Chicago & Milwaukee Railroad* v. *Ross*, 8 Fed. Rep. 544 ; S. C., 112 U. S. Sup. Ct. Rep. 377 ; *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 20.)

Claimants' exceptions did not go to misjoinder of causes of action or claims, nor to any defect in the libel save as scandalous and impertinent; all other objections were waived. (Benedict's Admiralty, 2d ed., Sec. 466 ; *Furniss* v. *The Magoun*, Olcott's Ad. 55.)

If any tender of wages was made, it was not followed and completed by a deposit of the amount in Court ; therefore the question of tender does not arise.

It is the duty of the Judge, when requisite for complete justice, to amplify the remedies for redressing wrongs. (Broome's Legal Maxims, 7th ed., 79 to 84.)

To reverse a judgment in admiralty on a mere question of fact, there must be a preponderance of evidence of so direct a character as would justify a new trial at common law, on the ground that the verdict was against the weight of evidence. The Court below saw the witnesses and could judge of their testimony and damages. (*Phelps* v. *City of Panama*, 1 Washington Territory Rep. 544 ; Same Case, 11 Otto, 464; *The Juniata*, 39 United States Sup. Ct. Rep. 337 ; *The Grafton*, 1 Blatchford C. C., 171,178; *The Wheeler*, 20 Wallace, 385 ; *Cushman* v. *Ryan*, 1 Story C. C. 91 ; *The Narragansett*, 1 Blatchford C. C. 211 ; *The Sunswick*, 5 Blatchford, C. C. 280; *Taylor* v *Harwood*, Taney, 437 ; *Barque Yankee* v. *Gallager*, 1 McAllister, 479.)

The Territorial Legislature has power to regulate the manner in which appeals in Admiralty shall be taken. (Revised Statutes of the United States, Sec. 1869 ; *Nickels* v. *Griffin*, 1 Washington Territory Rep. 374 ; *Cutler* v. *Steamship Columbia*, 1 Oregon, 101 ; *Zephyr* v. *Brown et al.*, 3 Pacific Reporter 186.)

This power has been exercised by the Legislature, and this appeal is taken in strict accordance with the provisions made by it. (Statutes of Washington Territory, 1883, 59 ; Rule IV., Supreme Court of Washington Territory.)

Appeals in Admiralty to this Court are not regulated by the statutes or rules applicable to appeals from the District to the Circuit Courts of the United States. (*Nickels* v. *Griffin*, 1 Washington Territory Rep. 374 ; *Zephyr* v. *Brown et al.*, 3 Pacific Rep. 186 ; *Waddell* v. *The Daisy*, 3 Pacific Reporter, 616.)

Opinion by Hoyt, Associate Justice.

The amended libel in this cause alleges in substance that in the month of May, 1882, the libellants shipped on the "Challenger," at the port of Philadelphia, for a voyage from that place to New Tacoma, Washington Territory : the libellant Smith shipping in the capacity of third mate, the libellant Watson as carpenter, the libellant Schaeffer as deck boy, and the others as seamen, at the wages specified in the libel. That they signed shipping articles. That the mates of said ship were men of violent temper, and cruel and inhuman dispositions, which fact was at all times known to the master, but not to the libellants until after the commencement of the voyage. That during the whole course of the voyage said libellants, without cause, were wrongfully subjected to beatings, imprisonments, cruelties and abuse by the mates of said ship; and that the master failed, neglected and refussd to use due diligence to protect the libellants from such acts ; and that each of said libellants had been damaged thereby in a certain sum set out in said libel. Then follows an allegation that wages are due said libellants as follows : Warrow, $37.50, Olander, $34, Anderson, $20.25, Herbert, $50, Ross, $29.26, Danielson, $22.70, Francisco, $33.70, Hanson, $21.20, Dahlgren, $28.05, Johnson, $29.20, Andreo, $25.20, Matson, $162.66 ; and a prayer for those various amounts, in addition to the amount of damages above mentioned.

The claimants excepted in detail to all the allegations in the amended libel, except those referring to the shipment of the libellants, and the amount of wages due them. These exceptions, twenty in number, were all overruled by the Court.

Issue was then made upon the allegations of said libel, and the cause heard upon proofs duly taken ; and a decree entered against the said ship and her claimants, in favor of each of said libellants (excepting certain of them, who had, pending the ac-

tion, compromised their claims), both for damages on account of said ill-treatment and for the wages found due, with costs. And from this decree claimants have prosecuted this appeal.

The question of most importance in the cause, and the one to which counsel have directed most of their argument, is as to the effect of Admiralty Rule Sixteen ; it being contended by appellants that the damages claimed for in this libel, by reason of said rule, could not be enforced against the ship, even although her owners might be liable in a suit *in personam ;* while the appellees insist that though said rule bars an action against the ship for an assault and battery, as such, yet it has no application to claims of the kind set out in their libel, which are for a breach of the contract, for protection and fair treatment, implied in the contract for service, by reason of certain assaults and beatings, and not an action to recover directly for damages from such assaults and beatings. Said Rule Sixteen reads as follows : " In all suits for an assault or beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be *in personam* only."

It is conceded that the Supreme Court had the power to adopt this rule ; it follows that it must be given such a construction as will give force to the words therein used, and meet the object for which it seems to have been adopted.

What, then, was the situation before this rule was promulgated, as to the liability of the ship for damages of this nature? Was she liable for every act of assault or beating committed on board of her; or was she liable only when such assaults or beatings were made uuder such circumstances as to constitute a violation of the contract or duty of protection and fair treatment ? We think the latter ; as in our opinion the only remedy the injured party on shipboard, as elsewhere, ever had for a single willful assault, as such, was an action *in personam* against the person who inflicted the injury; and it seems to us that without such rule it could never have been held that either the ship or her owners were liable in any form of action, from the simple fact that one person upon said ship had committed a willful assault upon another ; as we think that the only ground upon which one far away from and in no way connected with such assault could be held liable, would be, that he had in some way

violated his contract, either express or implied, with such in-jured party.

To give the construction to said rule contended for by appellees would, in our opinion, entirely nullify it, and leave the matter just where it was before its adoption. Without it the action could be *in personam* only, in all cases where the ship was not liable; and we do not see how either she or her owners could be held thus liable for damages of this nature, on other grounds than that the allowing of the same was in violation of some duty imposed by contract, or in consequence of negligence in the performance of some duty enjoined by law; and it is for just such violations or neglect that appellees claim the right to recover herein.

If, however, said rule is construed as contended for by appellants, it becomes at once of vital force ; for it says to the person who has had his contract for protection violated by assaults or beatings, that though he could before have proceeded against the ship, he must now content himself with a suit *in personam.*

We are not discussing the wisdom or justice of said rule, as these questions address themselves only to the power that made it.

We suppose that it was thought necessary in the interest of commerce to prevent the frequent attachment of vessels at ports far away from home, for liabilities which could not have been contemplated, and for which, therefore, no preparations could have been made; and that public interest demanded that occasional individual injustice should be suffered, rather than that commerce should be so inconvenienced and obstructed.

It is true that in many cases, as in that at bar, great hardship and injustice may be done, by compelling the injured party to go to the home of the owner to obtain redress, yet in most cases where there has been really serious abuse, the damages recovered will be such as to warrant such a course; and on the whole, the injustice may not be greater than to compel such owner to meet the tying up of his ship at any port, however remote or small, that she may chance to visit, upon every allegation, real or pretended, that by assault or beating the said contract has been broken.

The construction is strengthened by the language of the rule, for had the intention been to provide a remedy for an assault and battery, as such, only the words assault or beating were not the most appropriate; while if the intention was to cover all cases of actionable personal abuse, as well those that were, as those that were not, violations of such contract, no more apt words could have been found to express such intention.

Besides, the rules of which this under consideration is one have substantially covered the entire field of maritime jurisdiction, and have pointed out the proper proceeding in all, or nearly all, classes of cases; authorizing certain claims to be enforced *in rem*, certain *in personam*, and again others by either or both of such remedies ; and if it had not been the intention by this rule to indicate the procedure in all cases of liability growing out of assault and battery, there would have probably been another rule for the class of liabilities not so provided for.

We see nothing to induce us to hold that, having had its attention called to this matter of assault and beatings, the Supreme Court would have provided by rule for one class of liabilities arising therefrom, and left another class without any rule for its government.

The rule, fairly interpreted, is broad enough to cover all cases the *gravamen* of which is an assault or beating, and we think that such should be its construction.

To construe it otherwise would allow damages growing out of assault or beating in one form of action to be enforced against the ship, while the same elements of damage in another form of action could not be so enforced, and this would overturn a well established principle in admiralty, that substance and not form is the thing to be considered.

But appellees insist that even if this rule is construed as above stated yet it does not have these claims, as the injuries alleged are not those arising from assaults and beatings only, but also include those arising from much other ill-treatment. We think, however, that the principal element of alleged damages is for injuries received by assaults and beatings, and that these claims must be held to be° within said rule. We have discussed this question upon the language of said rule, and the circumstances of its adoption, rather than in the light of authority, as it was

concluded upon the argument that but little light can be found in the books upon this subject. Such light, however, as is shed by the authorities, both negative and positive, upon this subject, seems to favor the construction given above. A large number of cases have been brought to recover for this class of damages, and have with a single exception been prosecuted *in personam;* while in the single case where an attempt was made to hold the ship, the ruling of the Court was that she was not liable. (See *The Guiding Star*, 1st Federal Reporter, 347.)

It is, of course, true, that the negative authority above mentioned is entitled to but little weight, for it may have been out of abundant caution only that attorneys have always prosecuted *in personam* instead of *in rem;* yet when we consider the manifest advantages in many cases of the proceeding *in rem*, we must conclude that the fact that it has never been resorted to shows pretty conclusively that the bar of the country had construed such rule as a bar to the proceeding *in rem.*

The damages claimed for could not, then, be recovered in this action, and should have been stricken from the libel.

Appellants do not question the decree of the Court below for wages due the several libellants, but claim that there should have been no allowance of costs; the proof showing, as they allege, that they had before suit made a full tender of such wages: but as the lower Court seemed to think that a sufficient tender had not been shown, we are not disposed to disturb the finding for costs in favor of appellees in the Court below, as it does not sufficiently appear that they were wrongfully allowed.

There must be a decree entered here in favor of libellants for the wages found due, and for costs incurred in the lower Court, from which must be deducted the costs of this appeal, which are allowed appellants.

We concur :   S. C. WINGARD, Associate Justice.
                    GEORGE TURNER, Associate Justice.